Not JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No.: | 2:19-cv-00314-SB-JEM | Date: | 11/2/2021 |
|---|---|---|---|

| Title: | ***STO Home Delivery Inc. et al. v. Blue Package Delivery, LLC et al.*** |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:    [In Chambers] ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [Dkt. No. 102]**

Before the Court is a Motion for Default Judgment filed by Plaintiffs STO Home Delivery, Inc. (STO) and SOHO Express, Inc. (SOHO). Motion, Dkt. No. 102-1. Defendants Blue Package Delivery, LLC (Blue Package) and Blaine Byram did not file an opposition. The Court finds this matter suitable for decision without oral argument and vacates the November 8, 2021 hearing. Fed. R. Civ. P. 78; L.R. 7-15. For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion.

## I.    BACKGROUND

Plaintiffs are logistics and shipping companies who service "Southern California-based importers, wholesalers and online retailers of Chinese manufactured consumer goods." First Amended Complaint (FAC) ¶ 2, Dkt. No. 13. Blue Package "purported to operate a package shipping and delivery network that could deliver packages throughout the United States at prices substantially lower than other package delivery networks (such as United States Parcel Service and Federal Express) with 'last mile' delivery through the United States Postal

Service." *Id*. ¶ 4.  Byram owns and operates Blue Package as its chief executive, president, owner, and sole member.  *Id*. ¶ 17.  Plaintiffs allege that Blue Package is Byram's alter ego.  *Id*. ¶ 19(e).

Plaintiffs allege that Defendants made various false claims about the capabilities of Blue Package's shipping and delivery network to induce Plaintiffs to enter into "materially identical contracts" with Blue Package.  *Id*. ¶ 6.  Under these contracts, STO and SOHO paid Defendants $200,000 and $230,000, respectively, to secure equipment, software, installation, and training from Blue Package.  *Id*. ¶¶ 6-7.  Plaintiffs allege that, in reliance on Defendants' representations, they established distribution facilities for receiving, storing, sorting, manifesting, and loading packages.  *Id*. ¶ 7.  Byram, who had been "reachable and responsive" during negotiations, became extremely difficult to reach once Plaintiffs paid their respective fees.  *Id*. ¶ 37.  Plaintiffs allege that Defendants breached their contractual obligations by failing to provide the bargained-for equipment, training, software, and information (such as shipping rates) necessary to operate functional distribution centers.  *Id*. ¶ 8.  Plaintiffs also allege that Defendants attempted to enter into separate contracts with Plaintiffs' customers.  *Id*.

On February 22, 2019, Plaintiffs filed their FAC.  Dkt. No. 13.  The FAC pleads claims for: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) fraud; (4) common law unfair competition; and (5) unfair business competition under California Business and Professions Code § 17200.  *Id*. ¶¶ 62-88.  On June 14, 2019, Defendants filed an answer and counterclaim.  Dkt. No. 23.  On August 2, 2021, the Law Offices of Steven R. Young (SRY) filed a motion for leave to withdraw as counsel after it was unable to reach Byram for over a month, despite repeated attempts to do so via telephone and email.  Dkt. No. 90.  On September 10, 2021, after further unresponsiveness from Byram, the Court granted SRY's motion to withdraw, struck Defendants' answer and counterclaim, and directed the Clerk of Court to enter default against Defendants.  Order, Dkt. No. 100.  In its Order, the Court noted that Defendants had failed to file the requisite pretrial conference documents and had "[i]n short . . . ceased defending this action."  *Id*. at 2.  On September 14, 2021, the Clerk entered default against Defendants.  Dkt. No. 101.

## II.    LEGAL STANDARD

Before a court may rule on an application for default judgment, it must first determine whether the application complies with Federal Rule of Civil Procedure 55 and Local Rule 55-1.  *PepsiCo, Inc. v. Cal. Sec. Cans* (*PepsiCo*), 238 F. Supp.

2d 1172, 1175 (C.D. Cal. 2002).  The application must set forth:  (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Civil Relief Act (50 U.S.C. § 3931) does not apply; and (5) that notice of the application has been served on the defaulting party (if required).  *Id*.

Once these procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion."  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010).  The Ninth Circuit has identified seven factors courts may consider when exercising this discretion:  "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[I]n defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaints."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); Fed. R. Civ. P. 8(b)(6).  A court, however, must still consider whether the complaint contains the required factual support and asserts legally sufficient claims.  *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1272 (N.D. Cal. 2004) ("[Although] the factual allegations of [the complaint] together with other competent evidence submitted by the moving party are normally taken as true . . . this Court must still review the facts to insure that the Plaintiffs have properly stated claims for relief.").

## III.    DISCUSSION

### A.    <u>Procedural Requirements</u>

Plaintiffs' Motion satisfies the procedural requirements for default judgment. Defendants were served with both the FAC and Summons, Dkt. No. 18, and the Motion for Default Judgment, Dkt. No. 102-6.  The Clerk entered default against Defendants because they ceased defending this action.  Dkt. No. 101.  Plaintiffs' moving papers contain the information required by both the Local Rules and the

Federal Rules of Civil Procedure; no law or rule prohibits entry of a default
judgment against Defendants; neither Blue Package nor Byram is an infant or
incompetent person, nor is either exempted under the Servicemembers Civil Relief
Act. Motion at 3.

### B.    **Application of the *Eitel* Factors**

#### 1.    **Possibility of Prejudice to Plaintiff**

The first *Eitel* factor considers "whether the plaintiff will suffer prejudice if
default judgment is not entered." *PepsiCo*, 238 F. Supp. 2d at 1177. Absent entry
of a default judgment, Plaintiffs will most likely be without a remedy, given
Defendants' demonstrated unwillingness to participate in this action. Because
Plaintiffs "will suffer prejudice if [they are] without recourse against" Defendants,
this factor favors entry of default judgment. *Vogel v. Rite Aid Corp.*, 992 F. Supp.
2d 998, 1007 (C.D. Cal. 2014).

#### 2.    **Substantive Merits and Sufficiency of the Complaint**

*Eitel*'s second and third factors turn on the merits of a plaintiff's substantive
claims and the sufficiency of the FAC. *Eitel*, 782 F.2d at 1471-72. Courts
typically evaluate these factors together, looking to whether the plaintiff has
"state[d] a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d
at 1175. "[C]ourts often treat these as the [two] most important [*Eitel*] factors."
*Mnatsakanyan v. Goldsmith & Hull APC*, No. CV 12-4358 MMM (PLAx), 2013
WL 10155707, at *10 (C.D. Cal. May 14, 2013). In a case such as this one, where
a plaintiff brings multiple claims, the second and third *Eitel* factors "require that a
plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris USA,
Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). In this case,
Plaintiffs have sufficiently stated a claim for breach of contract—the sole claim on
which their request for damages depends.[1]

---

[1] The FAC also alleges claims for fraud, breach of implied covenant of good faith
and fair dealing, and unfair competition (under common law and § 17200). It is
unclear from Plaintiffs' short, four-page Motion whether Plaintiffs seek default
judgment on these claims as well. The Court does not decide that issue, nor
whether the FAC adequately alleges those other claims, because Plaintiffs seek
only compensatory damages in the amounts they paid to Defendants under their
respective contracts. Thus, the contract claim is a sufficient "basis on which
Plaintiff[s] could secure the requested relief." *Nobland Int'l, Inc. v. Dream*

Plaintiffs sufficiently state their claim for breach of contract.  To state such a claim, a plaintiff must show the existence of a contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and the resulting damages. *San Mateo Union High School Dist. v. County of San Mateo*, 213 Cal. App. 4th 418, 439 (2013).  Plaintiffs have adequately pleaded:  (1) the existence of multiple contracts that Plaintiffs fully performed (by paying the bargained-for sums); (2) that Defendants breached those contracts by failing to provide the promised goods and services; and (3) that Plaintiffs suffered damages as an actual and proximate result of Defendants' breaches.  FAC ¶¶ 7-8, 62-66.  Thus, these two "most important" *Eitel* factors weigh in favor of default judgment.  *Mnatsakanyan*, 2013 WL 10155707, at *10.

### 3.    Sum of Money at Stake

The fourth *Eitel* factor directs courts to "consider the amount of money at stake in relation to the seriousness of [the defendant's] conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176.  Plaintiffs request a total sum of $430,000 in compensatory damages ($230,000 to SOHO and $200,000 to STO).  Motion at 3-4.  Cal. Civ. Code § 3300 provides that "[f]or the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."  In addition, breach of contract damages must be "clearly ascertainable in both their nature and origin." Cal. Civ. Code § 3301.  Plaintiffs have satisfied these requirements and supplemented the compensatory damages they seek with sworn declarations from the Presidents of both SOHO and STO.  Dkt. Nos. 102-3, 102-4.  Accordingly, this factor weighs in favor of default judgment.

### 4.    Possibility of Dispute Over Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case."  *PepsiCo*, 238 F. Supp. 2d at 117.  Upon entry of default by the clerk, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d

---

*Apparel, Inc.*, No. 2:19-cv-07922-SB-SK, 2021 WL 4772528, at *2 n.1 (C.D. Cal. May 7, 2021) (analyzing only the claims that relate to the requested relief in a motion for default judgment).

915, 917-18 (9th Cir. 1987).  Here, there appears little possibility of a dispute concerning the material facts of Plaintiffs' allegations.  *See Elektra Ent. Grp. Inc. v. Crawford* (*Elektra Ent.*), 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").  Thus, this factor weighs in favor of default judgment.

## 5.    Possibility of Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo*, 238 F. Supp. 2d at 1177.  Where the defaulting party is "properly served with the complaint, the notice of entry of default, as well as the papers in support of the [default] motion," the failure to defend cannot be attributed to excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).  Here, there is no possibility that Defendants were unaware of the instant action, since Defendants appeared and participated in the litigation before defaulting.  Additionally, Plaintiffs have served on Defendants copies of all papers filed in this action, including the FAC and this Motion—which Defendants have not opposed.  Dkt. Nos. 18, 102-6.  "[T]he possibility of excusable neglect is remote" where, as here, Defendants have failed to take any action in a case for an "extended period of time" and indicates it will no longer defend itself. *Elektra Ent.*, 226 F.R.D. at 393.

## 6.    Strong Policy Favoring Decision on the Merits

Although "[c]ases should be decided upon their merits whenever reasonably possible," a defendant's failure to respond "makes a decision on the merits impractical if not impossible." *Eitel*, 782 F.2d at 1472.  "Under Rule 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *PepsiCo*, 238 F. Supp. 2d at 1177.  Because Defendants have "ceased . . . defending this action," Order at 2, this factor does not preclude the Court from entering default judgment against Defendants.

\*       \*       \*

Because each *Eitel* factor favors entry of default, the Court enters default judgment against Defendants for Plaintiffs' breach of contract claim.  The Court hereby dismisses Plaintiffs' breach of implied covenant and good faith, common law unfair business practices, and § 17200 claims because the breach of contract claim is sufficient for Plaintiffs to obtain the relief they seek in their Motion.

C.    **Relief Sought**

As set forth above, SOHO and STO paid $230,000 and $200,000 to
Defendants under their respective contracts.  SOHO and STO are entitled to
compensatory damages in those respective amounts.

In addition, Plaintiffs state that they "intend to make an application to the
Clerk of Court to tax costs in the amount of $2,518.20."  Motion at 4.  In the
absence of any supporting documentation, the Court cannot determine whether
these costs are reasonable and thus recoverable.  The Court thus reserves decision
on Plaintiffs' request for costs until such time as it receives the necessary materials
from Plaintiffs.

## IV.    CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Default Judgment.  The Court
awards SOHO $230,000 in compensatory damages.  The Court awards STO
$200,000 in compensatory damages.  Plaintiffs may file an application to tax costs
not later than **November 8, 2021**.

**IT IS SO ORDERED**.